UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF OHIO
EASTERN DIVISION


STATE OF NEW YORK, et al.,

      Plaintiffs,                           **Case No. 2:04-cv-1098**
                                            **JUDGE GREGORY L. FROST**
      v.                            **Magistrate Judge Norah McCann King**

AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,

      Defendants.


UNITED STATES OF AMERICA,

      Plaintiff,                         **Case No. 2:05-cv-360**
                                            **JUDGE GREGORY L. FROST**
      v.                            **Magistrate Judge Norah McCann King**

AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,

      Defendants.


**OPINION AND ORDER**

These consolidated cases are before the Court for consideration of the following sets of

filings:

(1) Defendants' Motion to Dismiss Plaintiff's Fourth and Fifth Claims for Relief (Doc. #

13 in 2:05-cv-360), Plaintiff's memorandum in opposition (Doc. # 17 in 2:05-cv-360),

Defendants' reply (Doc. # 20 in 2:05-cv-360), and Plaintiff's sur-reply (Doc. # 27 in 2:05-cv-

360); and

1

(2) Defendants' Motion to Dismiss Plaintiffs' First Claim for Relief (Doc. # 22 in 2:04-cv-1098), Plaintiffs' memorandum in opposition (Doc. # 25 in 2:04-cv-1098), and Defendants' reply (Doc. # 26 in 2:04-cv-1098).

The Court shall address each set of filings in turn.

## I.  Background

These two consolidated cases both involve alleged Clean Air Act violations by Defendants American Electric Power Service Corporation, Appalachian Power Company ("APCo"), and Columbus Southern Power Company.  In Case No. 2:04-cv-1098, the Commonwealth of Massachusetts and the states of New York , Connecticut, New Jersey, Vermont, New Hampshire, Maryland, and Rhode Island ("the State Plaintiffs") assert that the foregoing defendants unlawfully modified electric generating units that they continue to operate. In Case No. 2:05-cv-360, the United States asserts a similar action against the same defendants for the same violations.

On October 27, 2005, Defendants filed a motion to dismiss in each case.  In 2:04-cv-1098, Defendants move to dismiss Count One of the Complaint, which alleges that Defendants violated the Clean Air Act by modifying an electric utility generating unit at John E. Amos Plant in West Virginia.  In 2:05-cv-360, Defendants move to dismiss Counts Three and Four of the complaint in that action.  Both counts target alleged modifications by Defendants the electric utility generating unit located at the West Virginia facility.

The motions are now ripe for disposition.

## II.  Standard Involved

Under Fed. R. Civ. P. 12(b)(3), a defendant can raise by motion the defense of "improper

venue."  Once a defendant raises the defense of improper venue, those district courts in this

Circuit that have addressed the issue have generally assigned the plaintiff the burden of

establishing that venue is proper for each claim asserted in the complaint.  *Centerville ALF, Inc.*

*v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002); *NCR Corp. v. Gartner*

*Group, Inc.*, 1997 WL 1774881, at *3 (S.D. Ohio 1997).  *But see* 2 James W. Moore, *Moore's*

*Federal Practice* §12.32[4], at 12-50.1 (3d ed. 2003) ("Generally, the party challenging venue

has the burden of proving its impropriety"); 17 James W. Moore, *Moore's Federal Practice*

§110.01[5][c], at 110-22 to 110-22.1 (3d ed. 2003) (collecting several Sixth Circuit district court

cases adopting this approach).  This Court regards such assignment with suspicion, given the

nature of the affirmative defense being asserted, but notes that even an erroneous assignment of

the burden in this case would be harmless given the following analysis.  *See Johnson v.*

*Frederick and Lewis Timber and Equip. Co.*, 181 F.3d 101, 1999 WL 313876, at *2 (6th Cir.

1999) (unpublished table decision) (identifying improper venue as an affirmative defense);

*United States v. 31,200 Talwin 50 mg Tablets & Various Other Controlled Substances*, 812 F.2d

1409, 1987 WL 36256, at *1 (6th Cir. 1987) (unpublished table decision) (same).

More clear is that a district court may in its discretion choose to dispose of a motion to

dismiss for improper venue upon written submissions alone or by conducting an evidentiary

hearing.  *Centerville ALF, Inc.*, 197 F. Supp. 2d at 1046.  *Cf. Serras v. First Tennessee Bank*

*Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (motion to dismiss for lack of personal

jurisdiction can be decide based on written submissions or through an evidentiary hearing).  If

the district court decides the motion without a hearing, the " 'plaintiff must present only a *prima*

*facie* showing of venue,' " *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (quoting *DeLong Equip. Co. v. Washington Mills Abrasive*, 840 F.2d 843, 845 (11th Cir. 1988)), and the court " 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.' " *Serras*, 875 F.2d at 1214 (6th Cir. 1989) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), cert denied, 450 U.S. 981 (1981)).

### III.  Discussion

Defendants' motion to dismiss in Case No. 2:05-cv-360 argues that this Court must dismiss Counts Four and Five of the Complaint because the Clean Air Act provides that venue is proper only in the judicial district in which the involved source is located.  Thus, the companies reason, dismissal of these counts is warranted because they target alleged activities occurring in West Virginia, not Ohio.  Additionally, APCo seeks its dismissal as a party to this action because the remaining first three counts involve Ohio events with no allegation of APCo's involvement.

As Defendants correctly point out, the Clean Air Act provides that "[a]ny action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located."  42 U.S.C. § 7604(c)(1).  The statute explains that "emission standard or limitation" includes the conditions, requirements, standards, limitations, or schedules under the Act's permit schemes.  42 U.S.C. § 7604(f)(3) and (4).  The United States challenges the applicability of § 7604's venue provision on the grounds that it *only* limits venue in cases brought by citizens and not by the federal government.

This Court agrees that the § 7604(c)(1) restriction on venue applies only to citizen suits. *See Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332,

336 (6th Cir. 1989) (describing § 7604(c)(1) as providing for "citizen suits"); *see also Solow*

*Building Co., LLC v. ATC Associates, Inc.*, 175 F. Supp. 2d 465, 470 (E.D. N.Y. 2001)

(describing § 7604(c)(1) as "a venue provision that permits a citizen action to be commenced

only in the judicial district in which the offending source of the standard or limitation is

located"); *United States Environmental Protection Agency v. Port Authority of New York and*

*New Jersey*, 162 F. Supp. 2d 173, 186 (S.D. N.Y. 2001) (same).  Thus, the statute does not bar

venue in this District.

The United States suggests that venue is appropriate for three reasons.  First, the

government contends that APCo waived venue by failing to assert a personal jurisdiction

challenge in its Rule 12 motion.  Second, the government argues that because Defendants

conceded venue in another case before another judge in this District, they cannot contest venue

here.  Third, the United States asserts that even absent waiver, venue is correct because

Defendants reside in this District.

The government's initial theory of waiver–more accurately described as forfeiture–is

compelling.  The Federal Rules of Civil Procedure provide that "[a] defense of lack of

jurisdiction over the person [or] improper venue ... is waived if omitted from a motion in the

circumstances described in subdivision (g)."  Fed. R. Civ. P. 12(h)(1).  Rule 12(g) in turn

provides that "[i]f a party makes a motion under this rule but omits therefrom any defense or

objection then available to the party which this rule permits to be raised by motion, the party

shall not thereafter make a motion based on the defense or objection so omitted."  Thus,

according to the government, "if a party files a motion to dismiss and omits from that motion a

defense that was available at the time of the motion, then the party waives that defense."  (Doc. #

27, at 2.)  The extension of this reasoning is that because Defendants did not challenge personal

jurisdiction in their motion to dismiss challenging venue, Defendants conceded personal

jurisdiction, which in turn establishes venue.  *Centerville ALF, Inc. v. Balanced Care Corp.*, 197

F. Supp. 2d 1039, 1047-48 (S.D. Ohio 2002).

Another judge in this District addressed a similar issue in the *Centerville ALF, Inc.* case.

In deciding a Rule 12(b)(3) motion to dismiss for improper venue, that judge explained:

> Defendant asserts that venue is improper ... because the Court lacks
> personal jurisdiction over it ... .
>
> ...
>
> At the outset, the Court notes that Defendant, a corporation, has not
> brought a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), for want of
> personal jurisdiction.  In other words, Defendant has not argued outright that this
> Court should dismiss for lack of personal jurisdiction over it ... .  Rather,
> Defendants argues that *venue* is improper, because it does not reside (*i.e.*, is not
> subject to personal jurisdiction) in this district for purposes of those claims.
>
> Defendant's approach is not synonymous with a Rule 12(b)(2) Motion. ...
>
> With both personal jurisdiction and venue, a party may insist that the
> limitation be observed, or he may forgo that right, effectively consenting to the
> court's exercise of adjudicatory authority.  Challenges to personal jurisdiction and
> to venue must be raised separately, and failure to raise challenges results in
> waiver of the defenses.  As separate defenses, waiver of a personal jurisdiction
> defense does not automatically constitute a waiver regarding venue. ...  However,
> in the case of a corporate defendant, the residence of the defendant incorporates
> the test for personal jurisdiction.  In other words, if a corporate defendant is
> subject to personal jurisdiction in a judicial district, it is deemed to reside there
> for purposes of venue.
>
> A number of courts have held that venue is proper in that district when the
> corporate defendant had failed to challenge the court's exercise of personal
> jurisdiction. ...
>
> Herein, [Defendant] has failed to challenge this Court's exercise of
> personal jurisdiction over it, pursuant to Fed. R. Civ. P. 12(b)(2).  Because
> [Defendant] has failed to raise such a challenge, it has waived that argument,

> pursuant to Fed. R. Civ. P. 12(h).  Accordingly, even though [Defendant] has
> asserted that its contacts with the Southern District of Ohio ... are insufficient to
> render venue proper for [specified] claims, those arguments are immaterial.  It
> would defy logic to deem [Defendant] subject to this Court's personal
> jurisdiction, due to waiver, yet dismiss the ... claims against it for improper venue,
> due to lack of residency or, in other words, for want of personal jurisdiction.
> Having conceded that this Court has personal jurisdiction over it for each
> Plaintiff's claims, by virtue of its failure to raise a 12(b)(2) defense, Defendant is
> deemed to reside in the Southern District of Ohio for purposes of venue.

*Id*. at 1046-48 (citations omitted).

In Case No. 2:05-cv-360, Defendants raised in their Answer a lack of jurisdiction

generally as to all Defendants (Doc. # 2, at 4) and specifically as to APCo in the form of an

affirmative defense (Doc. # 2, at 28).  But simply asserting the defense of lack of personal

jurisdiction in a responsive pleading does not preserve the defense in perpetuity.  The Tenth

Circuit Court of Appeals has explained:

> Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a
> defense based on lack of personal jurisdiction is waived if not made by motion or
> included in a responsive pleading.  The rule, however, sets only the outer limits of
> waiver; it does not preclude waiver by implication.  Asserting a jurisdictional
> defect in the answer [does] not preserve the defense in perpetuity.  This defense
> may be lost by failure to assert it seasonably, by formal submission in a cause, or
> by submission through conduct.

*Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835, 2000

WL 147392, at *2 (10th Cir. 2000) (unpublished table decision) (citing *Yeldell v. Tutt,* 913 F.2d

533, 539 (8th Cir. 1990) (citations and quotations omitted)).

Here, Defendants have failed to formally submit the personal jurisdiction challenge in

this cause.  Rule 12(h)(1) sets up two ways in which a defendant can waive the defense of

personal jurisdiction.  A defendant waives the personal jurisdiction defense if the defendant

makes a motion under Rule 12 and omits the defense.  Alternatively, a defendant waives the

defense if he fails to raise it in a motion, in a responsive pleading, or in a Rule 15(a) amendment. The Rule separates these alternatives by use of the word "or," thus indicating a disjunctive scheme in which a defendant could raise the defense in a pleading, but then file a subsequent Rule 12 motion that, by omission of the personal jurisdiction defense, waives that defense.

By filing a Rule 12 motion here that did not raise lack of personal jurisdiction, Defendants ran afoul of Rule 12(g) and the consequent waiver provision of the first portion of Rule 12(h)(1). Thus, by failing to contest personal jurisdiction, APCo waived its previously asserted defense, which in turn supplies the residency component that defeats the company's venue challenge. The other defendant named in Counts Three and Four–AEP Service Corp.–also neglected to assert the defense in the Rule 12 motion. (Doc. # 2, at 28.) Thus, both companies have waived the personal jurisdiction defense, which establishes personal jurisdiction and residency, which in turn supports venue.

What the foregoing analysis does not explicitly address is any argument that, by challenging venue, Defendants necessarily and implicitly challenged personal jurisdiction insofar as the test for venue as it relates to a corporate defendant incorporates a personal jurisdiction inquiry. But Defendants do not make this argument. Rather, to avoid waiver, they point to their Answer and the alternative second ground for potential waiver contained in Rule 12(h), ignoring the effect of Rule 12(g) as it relates to the first method of waiver in Rule 12(h).

The Court is not convinced that, even if Defendants had made the "implied assertion" argument, such an argument is persuasive. The trial judge in *Centerville ALF, Inc*. did not even discuss such an argument, and recognizing here that a venue challenge implicitly raises a personal jurisdiction challenge, thereby preserving both, would be to construe Rule 12 in a way

that its plain language does not support.  The procedural rule does not carve out an exception for

venue, but presents an across-the-board rule.  A special approach for corporate defendants would

be illogical given the broad language of the rule and no apparent intent to differentiate between

corporate defendants and individual defendants.  The Court therefore concludes that Defendants

have waived, or forfeited, a challenge to personal jurisdiction.  Because personal jurisdiction

thus exists, Defendants are deemed to reside in Ohio, which establishes venue.

Having reached this conclusion, the Court need not decide the parties' remaining venue-

related disputes.  For purposes of completeness, however, the Court does recognize that the

United States also argues that because Defendants conceded venue in other cases, they cannot

challenge venue here.  The Court finds this less persuasive, latter argument dubious.

The Court also notes that, even assuming *arguendo* that Defendants, including APCo, did

not invalidate their venue challenge, the Court agrees with the United States' third reason for

finding that venue is proper in Case No. 2:05-cv-360.  The government asserts that venue is

proper because cases brought by the federal government fall under 42 U.S.C. §§ 7413 and 7477.

Section 7413 provides in relevant part that "[a]ny action under this subsection may be

brought in the district court of the United States for the district in which the violation is alleged

to have occurred, or is occurring, or in which the defendant resides, or where the defendant's

principal place of business is located."  42 U.S.C. § 7413(b).  The statues does not define

"resides," but the United States asserts that 28 U.S.C. § 1391 can properly inform the meaning of

the term.  *Cf. United States v. MPM Contractors, Inc.*, 763 F. Supp. 488, 492 (D. Kan. 1991)

(examining venue under both § 7413(b) and § 1391).

This Court agrees that neither § 7413(b) nor the any other provision of the Clean Air Act either defines "resides" or expressly incorporates § 1391.  But in seeking the definition used in this specific venue provision, the Court can turn to the general federal venue provision.  *See McCracken v. Automobile Club of Southern California, Inc.*, 891 F. Supp. 559, 561-62 (D. Kan. 1995) (explaining that "precedent exists for supplementing certain special venue statutes with the general provisions of § 1391(c)" and "borrow[ing] the definition of corporate residence from § 1391(c) in determining venue under 29 U.S.C. § 1132(e)(2)").

The statutory basis for venue is set forth in 28 U.S.C. § 1391(b), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

It is well settled that this "general provision[] must be read together with another general statute, Section 1391(c), which defines residence of corporations for purposes of [this] provision[]."  17 James W. Moore, *Moore's Federal Practice* § 110.01[3][a], at 110-15 (3d ed. 2003).  This Court must therefore examine 28 U.S.C § 1391(c):

> For purposes of venue under this chapter, *a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction* at the time the action is commenced.  In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, *such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State*, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

(emphasis added).  Pursuant to 28 U.S.C. § 1391(c), then, the test for proper venue for a corporate defendant in the multi-district Ohio incorporates the test for personal jurisdiction. *Centerville ALF, Inc.*, 197 F. Supp. 2d at 1048.  In other words, if APCo has sufficient contacts with the Southern District to establish personal jurisdiction, APCo would be deemed to reside in this District and venue would be proper.  *See* 28 U.S.C. § 1391(b)(1).

The government notes that APCo's 1999 annual report links the company's power plants to this District, that most of the company's officers are employees of AEP (which has its principal place of business in Columbus, Ohio), and that APCo lists a Columbus, Ohio location as its mailing address in Securities and Exchange Commission filings.  All of these facts are important to the personal jurisdiction inquiry.

In federal question cases in this Circuit,[1] "personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.' " *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).  *See also Brunner v. Hampson*, ___ F.3d ___, 2006 WL 462913, at *5 (6th Cir. 2006).  The Sixth Circuit Court of Appeals has recognized that " 'the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause.' " *Bird*, 289 F.3d at 871 (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)).  "Nevertheless, in evaluating

---

[1] The Court notes that a view contrary to the binding Sixth Circuit precedent exists.  *See* 17 James W. Moore, *Moore's Federal Practice* § 110.03[4][c], at 110-36 (3d ed. 2003) (questioning rationale of applying both federal minimum contacts/due process test and state long-arm statute).

whether personal jurisdiction is proper under Ohio's long-arm statute, [the Sixth Circuit Court of Appeals has] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.' " *Id*. at 871-72 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Sixth Circuit has set forth the following test for determining whether a defendant is subject to personal jurisdiction in the forum state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. at 874 (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  The first two prongs target the "tighter 'fit' " required by Ohio law, while the third prong examines the due process limitation on the exercise of personal jurisdiction.  *Brunner*, 2006 WL 462913, at *8-10.

Under the first prong of the test, APCo identifies itself as an AEP company that can provide energy to this state; APCO describes itself in its reply memorandum as "the generating plants owned and operated by APCo participate in the AEP System Power Pool."  (Doc. # 20, at 4 in 2:05-cv-360.)  The company thus apparently presents itself as involved with Ohio to further its business interests.  The second prong of the test requires that a defendant's contacts with the forum state be related to the operative facts of the controversy.  *Bird*, 289 F.3d at 875.  The Sixth Circuit Court of Appeals has explained that "[t]his factor 'does not require that the cause of

12

action formally "arise from" defendant's contacts with the forum; rather, this criterion requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." ' " *Id.* (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)).  By reasonable inference, APCo's alleged conduct is controlled by its officers and directors from their Columbus, Ohio location.  By virtue of their positions, these individuals are charged with oversight of the Amos plant and ultimately would be involved, from Ohio, with the modification decisions.  Such contacts with this District are unquestionably related to the operative facts of this case.

Finally, under the third prong of the test, "the exercise of jurisdiction [must] be reasonable in light of the connection that allegedly exists between the [ ] defendant[ ] and Ohio." *Id.*  Because this case satisfies the first two prongs of the test, there is an inference that, given APCo's connection to this District, personal jurisdiction exists here.  *Id.*  Moreover, in addition to this inference, this case satisfies the "[s]everal factors [that] are relevant to the reasonableness inquiry, 'including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of the controversies.' " *Id.*  Although there is a burden on APCo to defend the lawsuit in the Southern District, this minimal burden is not dispositive in light of the persuasive nature of the remaining factors.  The company is involved in other litigation in this District in which, as the United States notes, it has expressly conceded venue for purposes of convenience and in the interests of judicial economy.  Moreover, the company has provided the SEC with the Columbus, Ohio address, indicating its own recognition of this District as a base of operations.

The Court notes that Defendants have cited persuasive but not binding authority in which other courts have rejected portions of the foregoing arguments.  But these cases found the presence of a single factor (e.g., shared directors), standing alone, insufficient; they do not conclusively foreclose the proposition that various factors regarded together can support personal jurisdiction and thus venue.  *See, e.g., Invacare Corp. v. Sunrise Medical Holdings, Inc.*, No. 1:04CV1439, 2004 WL 3418915, at *8 (N.D. Ohio Dec. 15, 2004) ("Although admittedly the officers and directors of these two entities overlap, this factor alone is insufficient to warrant a finding that Sunrise Medical is Sunrise Holdings's alter ego").  The inquiry involved here calls for examination of all the relevant factors together.  *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998) (stating that "an alleged parent's control over a subsidiary is merely one factor of many to be considered" in determining jurisdiction).

Thus, although certainly a closer call, the Court concludes that, even absent waiver, the United States has presented a *prima facie* showing that personal jurisdiction exists.  This in turn supports that venue in this District is proper.  *See* 28 U.S.C. § 1391(b)(1) and (c).  Because Counts Four and Five are properly before this Court as a result of waiver and on the merits, the motion to dismiss Claim Three and Four and APCo's request to be dismissed from this litigation are not well taken.

This leaves the motion to dismiss in Case No. 2:04-cv-1098.  (Doc. # 22 in 2:04-cv-1098.)  In this motion, Defendants seek the dismissal of Count One, involving the West Virginia plant, as well as the dismissal of APCo as a party to the litigation.  The grounds for this motion are the same described above; in fact, much of the motions are identical.  And just as in Case No. 2:05-cv-360, Defendants have again waived, or forfeited, the personal jurisdiction issue in Case

14

No. 2:04-cv-1098 for the same reasons.  This again establishes that venue is proper under the

inquiry involving Ohio's long-arm statute and due process (to the extent applicable).

But this is not the end of the venue inquiry.  Defendants argue that the § 7604(c)(1)

venue restriction explained above precludes venue here because the Southern District of Ohio is

not "the judicial district in which such source is located."  42 U.S.C. § 7604(c)(1).  At first blush,

this argument is compelling because, unlike in Case No. 2:05-cv-360, Case No. 2:04-cv-1098 is

a citizen suit.  Thus, the Court must examine whether the statutory venue limitation can apply

here and whether, if it can apply, it does apply.

The State Plaintiffs argue that the venue restriction in § 7604(c)(1) applies only to suits

brought under § 7604(a)(1) and that Claim One falls under § 7604(a)(3).  Section 7604(a)(3)

provides:

> Except as provided in subsection (b) of this section, any person may commence a
> civil action on his own behalf–
>
> > ...
>
> > **(3)** against any person who proposes to construct or constructs any
> > new or modified major emitting facility without a permit required
> > under part C of subchapter I of this chapter (relating to significant
> > deterioration of air quality) or part D of subchapter I of this chapter
> > (relating to nonattainment) or who is alleged to have violated (if
> > there is evidence that the alleged violation has been repeated) or to
> > be in violation of any condition of such permit.

42 U.S.C. § 7604(a)(3).  This statutory provision, which explicitly provides for permit-related

actions, would seem beyond the reach of § 7604(c)(1)'s concern with "[a]ny action respecting a

violation by a stationary source of an emission standard or limitation or an order respecting such

15

standard or limitation."  42 U.S.C. § 7604(c)(1).  That latter language appears to target only

claims brought under § 7604(a)(1), which targets violations of "an emission standard or

limitation under this chapter or ... an order issued by the Administrator or a State with respect to

such a standard or limitation."  42 U.S.C. § 7604(a)(1).  Defendants in fact urge this Court to

adopt such a construction.  But such an approach would ignore the effect of § 7604(f).

Section 7604(f) serves to effectuate a curious broadening of the § 7604(c)(1) venue

limitation.  The former statute provides:[2]

> For purposes of this section, the term "emission standard or limitation under this chapter" means –
>
> **(1)** a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
>
> **(2)** a control or prohibition respecting a motor vehicle fuel or fuel additive, or
>
> **(3)** any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment),, section 7419 of this title (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 7545(e) and (f) of this title (relating to fuels and fuel additives), section 7491 of this title (relating to visibility protection), any condition or requirement under subchapter VI of this chapter (relating to ozone protection), or any requirement under section 7411 or 7412 of this title (without regard to whether such requirement is expressed as an emission standard or otherwise); or
>
> **(4)** any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the

---

[2] The statute appears to contain a number of punctuation and other errors, none of which appear to affect the meaning of the relevant portions addressed herein.

16

> Administrator, any permit term or condition, and any requirement
> to obtain a permit as a condition of operations.

> which is in effect under this chapter (including a requirement applicable by reason
> of section 7418 of this title) or under an applicable implementation plan.

42 U.S.C. § 7604(f). Thus, pursuant to § 7604(f)(4), Congress defines the cause of action set

forth in § 7604(a)(1) to include permit terms, conditions, and requirements.

This Court will not hazard a guess as to the reasoning behind this statutory scheme. The

Court is cautious to read the statute in such a manner, but the effect of § 7604(f) cannot be

ignored. The Court recognizes that construing § 7604(a)(1) to mirror the same concerns

addressed in § 7604(a)(3) produces an interesting result.

The curious effect of § 7604(f) is that it makes permit-related claims brought under §

7604(a)(1) subject to a notice requirement that does not apply to permit-related claims brought

under § 7604(a)(3). The State Plaintiffs analogize the statutory scheme at work in § 7604(b)'s

notice requirement for § 7604(a)(1) and (a)(2) actions to invalidate the application of §

7604(c)(1) to a § 7604(a)(3) action. But the § 7604(b) notice requirement expressly and

narrowly references only § 7604(a)(1) and (a)2), leaving § 7604(a)(3) untouched. In contrast, §

7604(c)(1) casts a wider net, stating that it applies to "[a]ny action respecting a violation by a

stationary source of an emission standard or limitation or an order respecting such standard or

limitation." Section 7604(b) indicates that Congress knew how to and could when it desired

expressly confine the effect of a provision to two of the three components of § 7604(a).

Congress did not elect to follow such a scheme in § 7604(c)(1), but instead arguably opted for

broader application of the latter statutory provision so that it encompasses § 7604(a)(3).

17

The Court cautiously states that although § 7604(c)(1) employs the language "an emission standard or limitation"–which is slightly different from "emission standard or limitation under this chapter," which is the language that § 7604(f) defines–it appears that Congress intended both statutory provisions to encompass the same concepts.  In other words, § 7604(c)(1) reaches claims under § 7604(a)(3).

Supporting this contention that § 7604(f) applies to § 7604(c)(1) so as to cover permit-related claims embodied in § 7604(a)(3) is the final portion of § 7604(a), which provides:

> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce *such an emission standard or limitation*, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties (except for actions under paragraph (2)).  The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title.  In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) of this section shall be provided 180 days before commencing such action.

42 U.S.C.A. § 7604.  This portion of the statute expressly confers jurisdiction in the district court "to enforce ... an emission standard or limitation" as well as "to order the Administrator to perform" various acts or duties, as well as to apply civil penalties where appropriate.  *Id*.  Thus, the quoted provision mirrors imprecisely the language of § 7604(a)(1) insofar as it omits "under this chapter" and uses "such an emission standard or limitation."  The "such" must be regarded as necessarily sweeping into its scope § 7604(a)(1), or else the quoted provision is illogically referencing nothing.  This evinces legislative intent to refer to "emission standard or limitation"

18

in a variety of ways.  Thus, the § 7604(c)(1) use of "an emission standard or limitation" relates to the § 7604(f) definition.


The end result is that § 7604(c)(1) applies to citizen suits of the sort *sub judice* and would, absent waiver, mandate that the State Plaintiffs assert their West Virginia claim "only in the judicial district in which such source is located"–which is not the Southern District of Ohio. Having reached this conclusion, the Court recognizes that the extant questions are whether a party can waive a statutory venue provision and, if so, whether that has occurred here.

Waiver of the § 7604(c)(1) restriction is possible.  *See Citizens for a Better Environment v. Costle*, 515 F. Supp. 264, 277 (D.C. Ill. 1981) (noting defendants' waiver of § 7604(c)(1)). Defendants, in fact, concede that they actively waived challenging venue in another case in this very District.  But, although they cannot attack venue based on a lack of personal jurisdiction, Defendants have not waived attacking venue based on the § 7604(c)(1) limitation.  The waiver of the personal jurisdiction component of venue under state law is ultimately of little concern, then, given that the statute providing the basis for attacking venue here does not involve personal jurisdiction.  In other words, § 7604(c)(1) erects an independent venue restriction that does not incorporate the personal jurisdiction inquiry.

Accordingly, as discussed above, the more narrow § 7604(c)(1) venue limitation applies distinct from the waiver effectuated here.  The end result is that while the United States' West Virginia claims can proceed in Case No. 2:05-cv-360, the State Plaintiffs' same claim in Case No. 2:04-cv-1098 cannot proceed in this District without the consent of Defendants.

This leaves APCo's request to be dismissed as a party in Case No. 2:04-cv-1098.  APCo argues that, following the dismissal of Claim One, the only remaining claim in Case No. 2:04-cv-1098 is Claim Two.  This claim targets the Conesville facility and does not name APCo as involved.  Accordingly, APCo's request to be dismissed as a party to this action is also meritorious, if dismissal is indeed eventually effectuated.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** the motion to dismiss in Case No. 2:05-cv-360 (Doc. # 13 in 2:05-cv-360), but finds well taken the motion to dismiss in Case No. 2:04-cv-1098 (Doc. # 22 in 2:04-cv-1098).  The Court recognizes that, because they must still defend on the West Virginia claims in Case No. 2:05-cv-360, Defendants may desire to waive application of § 7604(c)(1) in the consolidated Case No. 2:04-cv-1098 for purposes of convenience and judicial economy.  The Court therefore **STAYS** entering a decision on the motion to dismiss in Case No. 2:04-cv-1098 until the April 5, 2006 status conference, at which time the Court shall discuss with the parties this Opinion and Order, the parties' intentions, and whether a dismissal or severance and transfer of Claim One in Case No. 2:04-cv-1098 is appropriate.  *See* 28 U.S.C. § 1406(a).

**IT IS SO ORDERED.**

　　　　　　　　　　　　　 /s/   Gregory L. Frost
　　　　　　　　　　　　　GREGORY L. FROST
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE